SARAH DEBLOIS *v.* WILLIAM H. BARKER.

The act of the general assembly, passed at the May session, 1853, entitled "An act in amendment of an act entitled ' an act to provide for the repairing of the streets and highways in Newport,' " and which provides, that when the street commissioner shall grade any street, or part of a street, in the city of Newport, and shall pave suitable gutters therein, the owners of the land, as well as the land, bordering on such paved gutters, shall be chargeable with the cost of the curb-stones, set by the commissioners at the side of the gutters, to be assessed against such owners, with ten per cent. thereon as a penalty for neglect to pay such cost, is constitutionally valid.

BILL IN EQUITY. The bill stated that the complainant was the owner of two lots of land lying on the westerly side of South Touro-street, in Newport, on one pf which was a dwelling house, and that one Benjamin Coit, street commissioner for the city of Newport, together with certain other persons named in the bill, assessors of taxes, and the defendant, collector of taxes, for said city, intending to injure the plaintiff, and impair the value of her estate, executed their design in the following manner: The said Coit, as street commissioner, graded South Touro-street and laid down curb-stones therein, in a line parallel with, and about five feet from the easterly line of the complainant's said lots of land, and wrongfully claimed that he should receive from her the sum of $52.35 therefor, which she refused to pay; that thereupon the said assessors of taxes, on the 18th day of July, 1856, assessed a tax against her for said

sum under the head of " curb-stone assessment," in the tax roll made by them for the city of Newport, adding ten per cent. or $5.23, thereto, and delivered said assessment roll, including this with the other taxes of Newport, to the defendant, as collector; and that the defendant had advertised, and threatened to sell, in his capacity, said lots for the payment of said assessment, which the bill averred to be without authority of law. The bill prayed that Barker might be enjoined from selling the lots of land as threatened, and for general relief, and was met by general demurrer.

The hearing was had by agreement at the March term, 1857, in Bristol, the case being argued by *Currey* for the respondent, and by *Sheffield* for the complainant.

The question involved in the case was the constitutional validity of an act of the general assembly passed at the May session, 1853, and entitled " An act in amendment of an act entitled, ' an act to provide for the repairing of the streets and highways in Newport.' "

The *first* section of the act provides, that "whenever the street commissioner of Newport shall grade any street or part of a street, and pave suitable gutters therein, the owners of the land, as well as the land bordering on said paved gutters, shall be charged with the cost of the necessary curb-stones which said street commissioner shall place in or at the side of the gutters.

The *second* section provides, that in case of neglect on the part of the owners of the land to pay for the curb-stones so set, " the street commissioner shall give to the assessors of taxes, the amount of the costs of the curb-stones, which amount, together with ten per cent. thereon, said assessors shall assess against said land or the owner thereof, and give the said tax bill or bills to the collector of taxes, who shall collect the same in the same manner as the state or town taxes are or may be collected."

The *third* section provides an appeal for the person assessed to the court of common pleas of the county of Newport, provided the appeal be claimed within ten days after the assessment is made, and bond be given as in other cases of appeal to said court.

*Currey*, for the respondent, argued the following points:—

*First*, that the right of taxation inhering to all governments without definition or limitation, is to be exercised nevertheless according to some principle of apportionment, but that the right to prescribe the mode of apportionment necessarily attends the power of making it.

*Second.* That our state constitution recognizes the principle of apportionment in the assessment of taxes, and makes discrimination in this respect the duty of the legislature.

*Third.* That fairness in the distribution of the taxes (art. 1, § 2,) is an apportionment of them according to the benefits received from the public improvements made by them.

*Fourth.* That the legislature has the power to determine the circumstances which require discrimination, and to define the application and extent of it.

*Fifth.* That the discrimination or apportionment in this case is a fair one, warranted by the constitution, in analogy with long established usage in this state, and fully sustained by judicial decisions in this and other states.

He referred to and relied on the decision of this court, *In the matter of Dorrance-street, supra.*

*Sheffield*, for the complainant, distinguished the case at bar from the case *In the matter of Dorrance-street;* since in that case, whether the street was to be opened and the proprietors benefited were to be assessed for half the expense, the assessment of each not exceeding the value of the benefits received by each, was, under the law, to be determined by the city council; whereas, in this case, the whole power of imposing this burden was lodged by the law in a single street commissioner; and again, because sidewalks are not necessary as highways are; and there, the proceeding was open and public, whereas here, it is secret as well as oppressive, the party assessed having no opportunity to object to it.

He contended, that the law in question did not fairly distribute the burden in question, and so was in derogation of art. 1, § 2, of the constitution; and called attention to the ten per cent. to be added in case of neglect to pay the assessment, which, he said, might, with just as much propriety, have been 100 per .

cent., as indicating that this was an attempt to deprive the citizen of his property without due process of law, since the law provided no notice of the assessment to be given, and yet punished, by the added ten per cent. the party assessed, for neglect to pay it.

He cited 4 N. Hamp. R. 565, and *Couch* v. *Ulster & Orange Turnp. Co.* 4 Johns. Ch. R. 26.

AMES, C. J. The constitutional power of the general assembly, in providing by law for the making of necessary and convenient public ways, to order the expenditures thus occasioned to be assessed either in proportion to benefits received therefrom, or in proportion to ratable estate possessed, has already been considered and affirmed by this court, after full argument, in the case *In the matter of Dorrance-street;* and we see no reason to doubt the soundness of the conclusion to which, in that case, we arrived. One of the earliest occasions of the first mode of assessment was the paving of streets in Newport in 1719, (Digest 1730, p. 107,) and the successive sidewalk acts, as they are called, passed since 1821, in relation to the city of Providence, have, as we all know, sometimes thrown the whole, and sometimes, as in the law now under consideration, a portion of the expense of making the sidewalks of that city, upon the owners of the adjoining estates. Indeed, there is hardly a city in the Union in which this or similar burdens are not thus imposed; and the almost universal practice in this respect, amongst so many distinct and intelligent communities, is no bad proof of its practical fairness. We do not see the distinction in principle between the making of a sidewalk in a highway already opened, and the opening of a new highway, attempted by the counsel for the complainant. It is in our judgment quite as necessary that the foot passengers in the streets of our cities should be safely and conveniently accommodated, as that carts and carriages should be; and the frequent passage of the latter, renders absolutely necessary for the safety of the life and limbs of such passengers, that they should have a distinct place set apart for them in passing along the streets. Nor do we see any force in the objection to this law that it empowers a single street commissioner, instead of a board, to fix the grade and

pave the gutters of the streets of Newport; a species of duty quite as well, to say the least of it, performed by one as by many; and, at all events, involving a question of mere expediency, quite within the constitutional power of the legislature to decide. A surveyor of highways has much greater powers within his district, though he acts singly.

The last objection made to the law, that it provides for no notice of the amount of this charge, and yet inflicts a penalty of ten per cent. for neglect to pay it, applies rather to the exaction of the penalty than to the charge itself. There can be no neglect to pay a charge, the amount of which has not been ascertained and shown to the party to be charged; and the language of the act plainly implies, that it is the duty of the street commissioner to demand the cost of the curb-stones from the owner of the land, before giving the amount of it to the assessors to be assessed against him, with the ten per cent. penalty for neglect to pay it. The assessors give the same notice of this assessment as of the assessment of any other tax. The owner of the land knows, or is presumed to know this law, as well as every other law, under which taxes may be assessed against him. He attends the board upon their notice or not, at his pleasure. If a sidewalk has been built in front of his land, he knows, or is presumed to know, that the cost is a charge upon him and his land, and if not paid, will be assessed against him with the penalty. The assessors would not exact the penalty for neglect to pay, if he had no opportunity to pay; and if they did, he would have his remedy by the appeal which the law provides for him. But, as we have said, the objection applies to the ten per cent. penalty rather than to the charge of the cost of the curb-stones. It is quite time enough to consider it when a case is presented to us in which it is sought to be enforced, no notice having been given, or knowledge had, of the charge. This bill admits, in terms, that the complainant did not pay the charge, on account of the supposed want of legal authority to impose it; and nowhere avers that she did not have notice and demand of it. We see no want of authority in the street commissioner to set the curb-stones in front of the complainant's lots, and, she neglecting to pay the

38 *

cost of them, none in the assessors of taxes, to assess such cost with ten per cent. against her; and under such circumstances it is certainly the duty of the defendant, as collector, to sell the land to pay for it.

The demurrer must be sustained, and the bill dismissed, with costs.